Bettie **YELDER**, Plaintiff,

v.

**CREDIT BUREAU OF MONTGOMERY, L.L.C., and Providian Financial Corporation, Defendants.**

**No. CIV. A. 00–A–270–N.**

United States District Court, M.D. Alabama, Northern Division.

Jan. 19, 2001.

Order Denying Reconsideration Feb. 15, 2001.

Arlene M. Richardson, T. Allen French, Richardson & French, Hayneville, AL, for Plaintiffs.

Stephen E. Whitehead, Jeffrey Neal Cotney, Lloyd, Gray & Whitehead, P.C., Birmingham, AL, J. Knox Argo, J. Knox Argo, PC, Montgomery, AL, William H. Brooks, William Harris Morrow, Lightfoot, Franklin & White, L.L.C., Birmingham, AL, for Defendants.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, Chief Judge.

### I. *INTRODUCTION*

This matter comes before the court on Motions for Summary Judgment (docs.# 10, 12) filed by Defendants, Credit Bureau of Montgomery, L.L.C., ("CBM") and Providian Financial Corporation ("Providian"). Plaintiff Bettie Yelder ("Yelder") filed the instant suit in state court on January 28, 2000, alleging violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and state law claims of negligence, intentional infliction of emotional distress, and wantonness. Defendants removed the action to federal court. The court has federal question jurisdiction as to the FCRA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over all state claims pursuant to 28 U.S.C. § 1367. For the reasons to be discussed, CBM's Motion for Summary Judgement is due to be GRANTED in part and DENIED in part, and Providian's Motion for Summary Judgment is due to be GRANTED.

### II. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### III. *FACTS*

The submissions of the parties establish the following facts, construed in a light most favorable to the nonmovant:

On or about January of 1999, Providian mailed a "pre-approved" VISA credit card offer to Bettie Holt Yelder at 4371 U.S. Highway 80, Lowndesboro, Alabama.[1] Providian received the reply card requesting a new VISA card. The reply card contained the following information: a signature bearing the name "Bettie Yelder," her correct social security number, and incorrect work and home phone numbers. Based upon the reply card, Providian opened VISA account number 4479–5514–2351–7951 for Bettie H. Yelder, and mailed the card to the Lowndesboro address. Within thirty days, charges made on this credit card account reached the credit limit of $620.00. By March of 1999, the account was accruing both late and over the limit charges.

Yelder became aware of problems with her credit on or about May 5, 1999, when Security Alert Inc. denied her credit. Consequently, Yelder went to CBM and requested a copy of her credit report. On the credit request form's reason for disclosure section, Yelder marked the box that states "I certify that I believe my file is inaccurate due to fraud." The credit report listed the Providian Visa credit card account number 4479–5514–2351–7951. Yelder in turn contacted Providian and reported to them that she did not apply for the card and that someone must have fraudulently opened the account. Providian immediately changed the credit rating of the account to "lost/stolen" and generated a new number for the cardholder to use as a replacement. The new account number was 4479–4529–0025–1510.

In June of 1999, Providian's fraud department reviewed Yelder's claim of fraud and decided not to hold Yelder responsible for the charges. Providian's fraud department notified Providian's account maintenance department to send requests to the credit reporting agencies instructing them

---

**1.** Plaintiff alleges in her complaint that Providian sent the application to her husband's work place address, but in her Consolidated Response to Defendants' Motion for Summary Judgment, she says that additional discovery has revealed that Providian mailed the application to her step-daughter's address. The address in question is also listed on her credit report as a former/other address.

to remove any negative credit information relating to both the original and new account numbers. On June 16, 1999, the account maintenance department sent a request to the credit reporting agencies as to the new account number. The account maintenance department did not send a request to the credit reporting agencies to remove the information concerning the original account number.

Sometime in August, a store refused Yelder's credit card due to her "bad" credit. On or about September 15, 1999, Yelder returned to CBM and requested another credit report. On the credit request form, she once again marked the box "I certify that I believe my file is inaccurate due to fraud." She also noted on the form "Providian Visa." In November 1999, A–Plus Mortgage informed Yelder and her husband that they must repay the $842.00 Providian credit card debt before A–Plus Mortgage would give them a home equity loan. Yelder paid the debt. Yelder also completed a third request for disclosure form and again checked the box that states "I certify that I believe my file is inaccurate due to fraud." Soon after, Yelder brought this suit.

## IV. *DISCUSSION*

In her Complaint, Yelder alleges that the Defendants violated the FCRA (Count I), and asserts state law claims of negligence (Count II), intentional infliction of emotional distress (Count III), and wantonness (Count IV) against the Defendants. The Defendants in their Motions for Summary Judgment seek summary judgment on each of Yelder's claims. The court will address each claim in turn.

### A. FCRA

■ The purpose of the FCRA is to assure consumers that reporting agencies use reasonable procedures for collecting, using, and disseminating information. 15 U.S.C. § 1681(b). Sections 1681n and 1681o provide private rights of action for willful and negligent noncompliance with any duty imposed by the FCRA and allow recovery for actual damages and attorneys' fees and costs, as well as punitive damages in the case of willful noncompliance. Yelder asserts that CBM and Providian violated duties imposed by the FCRA.

### 1. CBM

■ Plaintiff alleges that CBM violated § 1681i by failing to reinvestigate and correct erroneous information on her credit report.[2] CBM asserts that it did not have a duty to reinvestigate the disputed claim because Yelder did not notify CBM of the disputed claim. Section 1681i(a)(1)(A) requires a consumer to notify a consumer reporting agency directly of the disputed charge in order to invoke the reporting agency's duty to reinvestigate under § 1681i.[3] *Casella v. Equifax Credit Information Services,* 56 F.3d 469, 474 (2d Cir. 1995); *Hovater v. Equifax, Inc.,* 823 F.2d 413, 417 (11th Cir.1987); *Parker v. Parker,* 124 F.Supp.2d. 1216, 1222–23 (M.D.Ala. 2000). The parties primarily dispute

---

2. The FCRA applies to CBM because CBM falls within the definition of a consumer reporting agency. "Consumer reporting agency" is defined as follows:

[A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

3. Section 1681i(a)(1)(A) provides that:

If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30–day period beginning on the date on which the agency receives the notice of the dispute from the consumer.

whether Yelder's requests for disclosure of her credit report on three separate occasions constituted sufficient notification of a dispute to invoke CBM's duty to reinvestigate under § 1681i.

Prior to delving into the merits, the court must address the appropriate test to apply in determining what constitutes notification under § 1681i(a)(1)(A). Yelder requests the court to adopt the standard used in evaluating a § 1681e(b) claim.[4] Section 1681e(b) requires a consumer reporting agency to "follow reasonable procedures to assure maximum possible accuracy" in the preparation and reporting of credit information.

The court, however, declines to import the reasonableness standard from § 1681e(b). Instead, the court adopts the reasonableness standard federal courts have used in examining what constitutes a proper reinvestigation under § 1681i. As with notification, section 1681i does not elaborate on what constitutes a proper reinvestigation. To determine what constitutes a proper reinvestigation, federal courts have not borrowed § 1681e(b)'s standard, but have used a lower reasonableness standard that does not include the clause "to ensure maximum possible accuracy." *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir.1991) (examining whether or not a consumer reporting agency "could have discovered an error in a particular report through a reasonable investigation."). Federal courts have reasoned that "[t]o the extent, the functions of § 1681e(b) and § 1681i are dissimilar ... it would be incongruous to engraft the maximum accuracy dictates of the former into the context of reinvestigation and grievance procedures governed by the latter." *Swoager v. Credit Bureau of Greater St. Petersburg, Fla.*, 608 F.Supp. 972, 975 (M.D.Fla.1985); *see also Grenier v. Equifax Credit Information Services*, 892 F.Supp. 57, 59 (D.Conn.1995) (same). Likewise, the court

finds that § 1681e(b)'s standard does not apply in examining § 1681i's notification procedures. Therefore, the court will examine whether or not CBM employed reasonable notification procedures.

■ Yelder asserts that CBM's notification procedures are unreasonable because CBM did not view her three credit request forms as notification of a disputed claim. Yelder argues that by marking the box "I certify that I believe my file is inaccurate due to fraud" she provided notice to CBM that her file was inaccurate due to fraud. In addition, on one of the forms she identified the specific disputed claim by writing "Providian VISA" on the form.

CBM provides two arguments as to why its procedures are reasonable. First, CBM explains that it lists as one of the reasons for disclosure that "I certify that I believe my file is inaccurate due to fraud" for accounting purposes and not for notification purposes. A consumer is entitled to one free credit report every twelve months upon request if the consumer certifies that (1) she is unemployed and plan to seek employment within 60 days, (2) she is on welfare, or (3) her report is inaccurate due to fraud. 15 U.S.C. § 1681j(c) Otherwise, a consumer reporting agency may charge a consumer up to eight dollars for a credit report. 15 U.S.C. § 1681j(a)(1)(A)(i). Thus, CBM lists the "inaccurate due to fraud" reason to determine if it may charge the consumer for the credit report.

Second, and more important, CBM argues that it does not reinvestigate all credit request forms because the consumer has not actually received her credit report at the time of the request for disclosure. Only after receiving her credit report may a consumer examine it to determine if a dispute exists and to pinpoint the disputed claim. Once a consumer discovers the dispute, she can begin the reinvestigation by filling out another form provided by CBM.

The court agrees with CBM that Yelder's theory that CBM must reinvestigate

---

4. Yelder does not state expressly that the court should adopt the § 1681e(b) reasonableness standard, but implicitly requests the

court to do so because the reasonableness standard she cites to in her brief comes from cases addressing § 1681e(b).

every credit form requested due to alleged fraud does not comport with § 1681i's requirement that the consumer directly notify the consumer reporting agency of a disputed claim. As CBM points out, a consumer does not know if a dispute actually exists and has not pinpointed the disputed claim, until she reviews the credit report. Therefore, the court finds that CBM reasonably viewed its credit request form as not constituting notification of a disputed claim. *Parker*, at 1223–24 (holding that a request for file disclosures does not satisfy § 1681i's notification requirement).

■ Although the court finds that Yelder did not notify CBM merely by submitting the three credit request forms, Yelder has produced evidence of notification based on her statement in her affidavit that:

Each time I went to the Credit Bureau of Montgomery, I explained to an employee that there was a credit card account on my credit report that was not mine. I was never told that I needed to do anything other than fill out the form that they gave me (credit report form). I was never told anything or given anything regarding how to dispute the inaccurate information.

(Yelder Aff. at ¶ 5). Because the parties did not fully discuss this statement, the court directed them to brief what effect this statement has on the summary judgment issue of whether the Plaintiff notified CBM as to the disputed credit card debt. After examining the supplemental briefs, the court finds that this statement in Yelder's affidavit, although contested by CBM, is sufficient to create a genuine issue of material fact as to whether Yelder notified CBM.

■ The court finds that a consumer who informs an employee of a consumer reporting agency that a credit card account on her credit file is not hers has provided direct notification of a disputed claim. At that point, the employee has a duty to provide the consumer with the correct form to start the reinvestigation, if the agency requires such a form, or interview the consumer and fill out the form for her. In this case, Yelder alleges that she told a CBM employee of the dispute, and at that point she directly notified CBM of the dispute.

CBM attempts to discredit Yelder's notification by arguing that Yelder should have known that the credit request form was not the proper form for her to fill out and that she needed to do more to notify CBM. First, CBM asserts that nothing on the credit request form provides any indication that it serves to trigger an investigation of a disputed account. The credit request form, however, does not provide any indication that it does not serve to trigger an investigation. With this absence of an indication either way, Yelder reasonably could have relied upon the assertions of CBM's employee that she need only fill out the credit request form.

Second, CBM asserts that the summary of rights provided to Yelder detailed how a consumer dispute is settled and revealed that a credit request form does not constitute sufficient notice of a disputed claim. The summary of rights, however, does not specify how a consumer notifies a consumer reporting agency of a dispute. The summary only provides that: "[i]f you tell a CRA that your file contains inaccurate information, the CRA must investigate the items ...." (Def. CBM's Supp. Br., Exh. B at ¶ 4). CBM also argues that because it did not provide Yelder with a written report of the investigation as mentioned in the summary of rights, Yelder should have known that she did not notify CBM. As mentioned above, Yelder did everything she was told to do to notify CBM. Just because CBM did not follow the procedures in the summary of rights does not mean that Yelder did not notify CBM or could reasonably think that she had notified CBM in some other manner.[5]

---

5. CBM also argues that Yelder's failure to inform A–Plus Mortgage that her credit report

was inaccurate due to fraud somehow waives CBM's duty to reinvestigate, because A–Plus

Third, CBM contends that it gave Yelder a list of commonly asked questions and in the list it explains how a consumer may correct a mistake in a credit file. (Pl. Resp., Exh. 12). Yelder, however, disputes that she was "given anything regarding how to dispute the inaccurate information." (Yelder Aff. at ¶ 5.) There exists a question of fact for the jury.

Fourth, CBM counters by arguing that Yelder's statement to a CBM employee fails to create a genuine issue of material fact because Yelder did not identify the specific disputed account and did not follow up regarding her dispute. The court disagrees. Once Yelder informed the employee of a dispute in general, the employee was notified of a dispute and reasonably should have asked Yelder about what specific account she disputes or should have directed Yelder to the appropriate forms to start the reinvestigation process. Furthermore, Yelder noted "Providian Visa" on her second request form. Also, Yelder's failure to follow up does not obviate CBM's duty to reinvestigate once provided notice. Section 1681i only requires a consumer to notify a consumer reporting agency to invoke the statutory duty and does not require the consumer to follow up with the consumer reporting agency in order to ensure that the statutory duty to

reinvestigate does not lapse.[6] Moreover, Yelder's two trips back to CBM after her first visit could be construed as follow up. Therefore, CBM's Motion for Summary Judgment is due to be DENIED as to the FCRA claim.

### 2. Providian

■ Yelder also asserts that Providian violated § 1681s–2(a)(2)[7] of the FCRA by failing to correct and update the information it furnished to CBM concerning Yelder's disputed claim. Yelder's claim fails because no private right of action exists for a violation of § 1681s–2(a). Section 1681s–2(c) provides that "Sections 1681n and 1681o of this title (the private action sections) do not apply to any failure to comply with subsection (a) of this section, except as provided in section 1681s(c)(1)(B) of this title." Because this suit does not fall within the exception found in § 1681s(c)(1)(B),[8] Yelder does not have a right of action against Providian for a violation of § 1681s–2(a)(2).[9]

### B. Negligence

Both Defendants argue in their reply briefs that 15 U.S.C. § 1681h(e) provides Defendants qualified immunity from Yelder's state law claims for negligence. Section 1681h(e) provides that:

> agency information that the person determines is not complete or accurate, shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

could have contacted CBM or told Yelder how to contest the disputed claim. The court finds this argument irrelevant as to whether Yelder notified CBM of a disputed claim. Section 1681i requires a consumer to notify the consumer reporting agency of the dispute, and not a company which uses a credit report to determine whether or not to grant a consumer credit.

6. The court recognizes that the FCRA has a two-year statute of limitations and consequently, a consumer must bring a suit within two years in order to have a viable claim. 15 U.S.C. § 1681p.

7. Section 1681s–2(a)(2) reads as follows:
A person who—(A) regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and (B) has furnished to a consumer reporting

8. Section 1681s(c)(1)(B) permits a state to bring an action on behalf of the residents of the state.

9. Because the court finds that Yelder has no private right of action for the alleged § 1681s–2(a)(2) violation, the court need not address Providian's argument that Yelder failed to allege a § 1681s–2(a)(2) violation in her Complaint.

Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

Accordingly, Defendants assert that absent a showing of malice or willful intent to injure, Yelder's state law claims for negligence fail. Because Defendants raised this issue for the first time in their reply briefs, the court gave Yelder time to respond to the question of whether or not § 1681h(e) bars her state law claims for negligence.

In her response, Yelder does not challenge that § 1681h(e) bars her state law claim of negligence against CBM. Thus, this claim is deemed abandoned. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995) (*en banc*) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

■ As to Providian, Yelder asserts that § 1681h(e) does not bar her negligence claim because she does not base it on the furnishing of information to a consumer reporting agency.[10] Instead, Yelder asserts that Providian acted negligently in soliciting and issuing credit cards. Yelder correctly notes that the FCRA does not deal with problems relating to the solicitation and issuing of credit cards. Providian does not dispute that § 1681h(e) does not bar this theory of negligence. Providian, however, asserts that Yelder has not presented any evidence to show that Providian acted negligently in opening the disputed credit card account.

■ To establish a claim of negligence, a plaintiff must establish that the defendant owed a duty to the plaintiff, that defendant breached that duty, and that the breach proximately caused plaintiff to be injured. *Martin v. Goodies Distribution*, 695 So.2d 1175, 1177 (Ala.1997). Providian argues that even assuming it owes a duty of reasonable care to a person in whose name a credit card account is opened to ensure that the person opening the account is not an imposter, it has not breached that duty. *Cf. Patrick v. Union State Bank*, 681 So.2d 1364, 1371 (Ala.1996) (holding that "a bank owes a duty of reasonable care to the person in whose name, and upon whose identification, an account is opened to ensure that the person opening the account and to whom checks are given is not an imposter"). Yelder asserts that she has produced sufficient evidence to create a fact issue of whether Providian breached its duty simply because Providian issued a credit card to an imposter. Alternatively, Yelder asserts that Providian breached its duty by failing to follow

---

10. In Plaintiff's Response to Defendant Providian's Response to Plaintiff's Reply Brief, Yelder asserts for the first time that § 1681h(e) does not bar her negligence claim based on Providian negligently furnishing false information to a consumer reporting agency. The plain language of § 1681h(e) bars such a state law negligence suit, unless Providian acted with malice or willful intent to injure such consumer. *E.g., Rhodes v. Ford Motor Credit Co.*, 951 F.2d 905, 906–07 (8th Cir.1991); *Parker*, at 1226–27. Yelder does not argue that Providian acted with malice or willful intent to injure her. Instead, Yelder contends that the court should not find both that the FCRA precludes her from bringing an action against Providian under the FCRA and that the FCRA precludes her from filing a state law negligence claim, because such a ruling would leave her no redress for her injuries. In other words, she would fall between the cracks. The court, however, must follow the law as written. Thus, § 1681h(e) bars Yelder's state law negligence claim based on furnishing false information.

commercially reasonable procedures in verifying credit card applications. The court will address each of these arguments in turn.

First, Yelder asserts that the doctrine of res ipsa loquitur applies to infer negligence. In particular, Yelder contends that "[t]he fact that the card was issued, and chargers were made is at least some evidence, in and of itself, that any verification procedures Providian has in place are inadequate." (Pl. Br. in Resp. to Def. Providian's Reply Br., at 5). For the doctrine of res ipsa loquitur to apply, a plaintiff must establish that: (1) the defendant had full management and control of the instrumentality which caused the injury; (2) the circumstances are such that according to common knowledge and the experience of mankind the accident could not have happened if those having control of the instrumentality had not been negligent; and (3) the plaintiff's injury resulted from the accident. *Ex parte Crabtree Industrial Waste, Inc.*, 728 So.2d 155, 156 (1998).

The Alabama Supreme Court's decision in *Patrick v. Union State Bank* provides guidance as to whether the doctrine of res ipsa loquitur applies in this case. In *Patrick*, the court faced a factually analogous issue of whether a bank negligently allowed an imposter to open a checking account in plaintiff's name. 681 So.2d at 1365. The court in *Patrick* implicitly held that the doctrine of res ipsa loquitur did not apply. First, the court recognized that the plaintiff could not satisfy the second element of the res ipsa loquitur because it stated that "we recognize that strict observance of an identification policy does not provide a fool-proof mechanism to deter banking fraud." *Id.* at 1370. Second, the court did not hold that the plaintiff established sufficient facts that the bank breached its duty by simply allowing an imposter to open an checking account in the name of the plaintiff. Instead, the court relied on the plaintiff's experts who testified that the bank failed to follow commercially reasonable procedures in open-

ing a checking account. *Id.* at 1367, 1370. In particular, the bank did not follow the reasonable procedures of requiring photographic identification and of verifying the authenticity of signatures contained on the identification and the bank signature card. *Id.* at 1370.

Likewise, this court finds that Yelder cannot rely solely on the doctrine of res ipsa loquitur to prove a credit card provider failed to follow the standard of care. While the doctrine of res ipsa loquitur allows one to prove negligence through circumstantial evidence, "[i]f one can reasonably conclude that the accident could have happened without any negligence on the part of the defendants, then the res ipsa loquitur presumption does not apply." *Ex parte Crabtree Industrial Waste, Inc.*, 728 So.2d at 158. As with a bank, a credit card provider who strictly adheres to a verification policy will not stop all credit card fraud. Thus, one could reasonably conclude that the fraud could have occurred without any negligence. Accordingly, the court finds that the doctrine of res ipsa loquitur does not apply in this situation. *Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 201 (D.C.1991) (holding that a plaintiff cannot rely on the doctrine of res ipsa loquitur to prove a credit card provider violated the standard of care by issuing a credit card to an imposter).

Second, Yelder asserts that Providian did not employ commercially reasonable procedures to verify credit card applications. In verifying credit card applications, Providian verifies name, address, and social security number on all credit card applications by comparing it to the information contained in the credit reports from the three credit bureaus. (Buck Dep. at 125–26). As to the applicant's address, if the address on the credit reports differs from the address the applicant gives over the phone, Providian follows the applicant's word as to the address. (Buck Dep. at 37, lines 18–22). Prior to opening an account and issuing a

credit card, Providian calls the phone number on the application to verify the information given on the application and to listen for suspicious activity that may indicate fraud.[11] (Buck Dep. at 127, 129, 131–32).

Yelder asserts that these procedures fall below the standard of care owed by a credit card provider because Providian does not rely on the address listed in the credit bureau reports, does not call the telephone number listed in the credit reports, and does not require the applicant to send some form of a photographic identification, such as a copy of a driver's license. Yelder, however, offers no evidence to show that these procedures are commercially reasonable for credit card companies to follow in verifying the identity of a credit card applicant. She offers no expert testimony on whether these procedures are commercially reasonable. *Beard*, 587 A.2d at 200–01 (holding that a plaintiff must produce expert testimony to establish the commercial reasonableness of the procedures a credit card provider must follow in verifying credit card applications). Nor does Yelder offer any evidence as to the procedures other credit card companies employ to verify credit card applications. *Patrick*, 681 So.2d at 1370 (holding that a bank did not employ commercially reasonable procedures where a plaintiff produced expert testimony that the defendant bank did not follow the procedures used by most banks in verifying the identity of a consumer who opens a new checking account). Without evidence as to the reasonableness of the Yelder's suggested procedures or evidence as to what other credit card providers follow in verifying credit card applications, Yelder cannot establish that Providian failed to employ commercially reasonable procedures to verify credit card applications.

Therefore, Providian's Motion for Summary Judgment is due to be GRANTED.

### C. Wantonness

■■■ Defendants both claim that Yelder has failed to produce sufficient evidence to establish a claim for wantonness. The Alabama Code defines wantonness as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala.Code § 6–11–20(b)(3). The Alabama Supreme Court described wantonness as "the conscious doing of some act or the conscious omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury would likely or probably result." *Kmart Corp. v. Peak*, 757 So.2d 1138, 1144 (1999) (quoting *Alfa Mutual Ins. Co. v. Roush*, 723 So.2d 1250, 1258 (Ala.1998)). "Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability ...." *Ex Parte Jackson*, 737 So.2d 452, 455 (Ala.1999) (quoting *Lynn Strickland Sales & Serv., Inc. v. Aero-Lane Fabricators, Inc.*, 510 So.2d 142 (Ala.1987), *overruled on other grounds Roush*, 723 So.2d at 1258); *Yamaha Motor Co., Ltd. v. Thornton*, 579 So.2d 619, 623 (Ala.1991) ("[W]antonness, which requires some degree of conscious culpability, is not to be confused with negligence (i.e., mere inadvertence)."). "To prove wantonness, it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff." *Roush*, 723 So.2d at 1256.

■■■ Yelder alleges that CBM acted with wantonness by not reinvestigating the disputed credit card claim even though she notified CBM by filing out three credit request forms. As the court mentioned

---

11. Yelder alleges that Providian placed no calls to the telephone number on the application and offers as evidence the message logs for the disputed credit card account. Providian, however, does not open an account until it has called the applicant to verify the information on the application. (Buck Dep. at 131, lines 21–23). Therefore, the message log would not indicate such an entry because the account would not have been opened at the time of the alleged call. Consequently, Yelder has produced no evidence to show that Providian did not call the number on the application before opening the account.

previously, the credit request forms alone did not constitute adequate notification of a disputed claim. The only evidence of notification produced by Yelder is that she told a CBM employee of the disputed claim, and the employee failed to provide her with instructions on any further requirements necessary to dispute the claim. CBM counters that Yelder has produced no evidence to show that CBM acted with a reckless or conscious disregard of Yelder's rights by not investigating her disputed claim. The court agrees. Yelder has produced no evidence to show that the employee acted with a conscious disregard of Yelder's rights by providing her with the incorrect form to challenge a disputed claim. At most, Yelder's evidence supports a claim for simple negligence which consists of mere inadvertence, inattention or thoughtlessness, while wantonness requires some degree of conscious culpability which does not exist in this case. *Lynn,* 510 So.2d at 145. Therefore, CBM's Motion for Summary Judgment is due to be GRANTED as to this claim.

The court also finds that Yelder has presented no evidence to show that Providian acted with a conscious disregard of Yelder's rights by issuing a credit card in Yelder's name to an imposter. Contrary to Yelder's assertions, the evidence before the court shows that Providian does have procedures in place to verify the identity of the credit card applicant and does follow those procedures in reviewing all credit card applications. Yelder also has not produced any evidence to show that Providian's procedures are so woefully inadequate as to constitute a conscious disregard of Yelder's rights. Accordingly, by following the verification procedures, Providian has not acted with a conscious or reckless disregard of Yelder's rights. Therefore, Providian's Motion for Summary Judgment is due to be GRANTED as to this claim.

### D. Intentional Infliction of Emotional Distress

Yelder in her Complaint alleges a claim against CBM and Providian for intentional infliction of emotional distress. CBM and Providian argue in their Motions for Summary Judgment that the court should grant them summary judgment as to this claim. In response to the Defendants' Motions for Summary Judgment, Yelder states that she is not seeking to recover based upon the independent claim of intentional infliction of emotional distress. Instead, she argues that she seeks damages for mental anguish, only if she prevails on her claims for FCRA, negligence, and wantonness. Because Yelder does not rely upon an independent claim for intentional infliction of emotional distress as a grounds for recovery, this claim is deemed abandoned. *Resolution Trust Corp.,* 43 F.3d at 599.

## V. CONCLUSION

The court finds that Yelder has produced sufficient evidence to create a genuine issue of material fact as to whether she notified CBM of the disputed claim, thereby precluding the court from granting CBM summary judgment on Yelder's FCRA claim. The court, however, finds that Defendants' Motions for Summary Judgment are due to be GRANTED on all other claims. Accordingly it is ORDERED that,

1. The Motion for Summary Judgment filed by Defendant Credit Bureau of Montgomery (doc. # 10) is DENIED as to Plaintiff Bettie Yelder's FCRA claim.

2. The Motion for Summary Judgment filed by Defendant Credit Bureau of Montgomery (doc. # 10) is GRANTED as to Plaintiff Bettie Yelder's state law claims of negligence, wantonness, and intentional infliction of emotional distress. Judgment is entered in favor of Defendant, Credit Bureau of Montgomery, and against the Plaintiff, Bettie Yelder, on the state law claims of negligence, wantonness, and intentional infliction of emotional distress.

3. The Motion for Summary Judgment filed by Defendant Providian Financial

Corporation (doc. # 12) is GRANTED. Judgment is entered in favor of Defendant, Providian Financial Corporation, and against the Plaintiff, Bettie Yelder.

4. The case will proceed against Defendant Credit Bureau of Montgomery on Plaintiff Bettie Yelder's FCRA claim.

### ORDER

This matter comes before the court on Plaintiff's Motion to Reconsider the Court's Order Dismissing Defendant Providian Financial Services (doc. # 36) filed on February 12, 2001.[1]

Plaintiff requests the court to reconsider its decision to dismiss Plaintiff's Fair Credit Reporting Act ("FCRA") claim, 15 U.S.C. § 1681 *et seq.*, against Defendant Providian Financial Corporation ("Providian"). The court in its order dated January 19, 2001, dismissed Plaintiff's FCRA claim based on a violation of 15 U.S.C. § 1681s–2(a) "because no private right of action exists for a violation of § 1681s–2(a)." In her Motion to Reconsider, Plaintiff contends that most federal district courts have held that a consumer may maintain a private action against furnishers of information based on a violation of § 1681s–2(b). *Compare McMillan v. Experian Information Services, Inc.*, 119 F.Supp.2d 84, 86 (D.Conn.2000) (holding that a consumer may maintain a private action against furnishers of information based on a violation of § 1681s–2(b)); *DiMezza v. First USA Bank, Inc.*, 103 F.Supp.2d 1296, 1301 (D.N.M.2000) (same); *Dornhecker v. Ameritech Corp.*, 99 F.Supp.2d 918, 927 (D.Ill. 2000) (same) *with Carney v. Experian Information Solutions, Inc.*, 57 F.Supp.2d 496, 502 (W.D.Tenn.1999) (holding that a consumer has no private right of action against furnishers of information for a violation of § 1681s–2(b)).

■ The court rejects Plaintiff's request for reconsideration of its order dismissing the FCRA claim against Providian for two reasons. First, Plaintiff raises for the first time in her Motion to Reconsider the argument that Providian violated § 1681s–2(b). In her summary judgment briefs, Plaintiff did not present any argument that Providian violated § 1681s–2(b). Instead, Plaintiff only contended that Providian violated § 1681s–2(a). As is the case for a motion to alter or amend a judgment under Rule 59(e), a motion for reconsideration brought under Rule 60(b) is not at the disposal of parties who want to raise new arguments for the first time. *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 404 (7th Cir.1986) ("Although the defendants attempted to raise the argument in their motion for reconsideration, a motion for reconsideration is an improper vehicle to introduce evidence previously available or to tender new legal theories."); *see also Hashwani v. Barbar*, 822 F.2d 1038, 1041 (11th Cir.1987) (holding that a district court did not abuse its discretion by not considering arguments raised for the first time on a motion to amend a summary judgment order); *American Home Assurance Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1239 (11th Cir.1985) (same). Therefore, the court will not consider Plaintiff's argument that Providian violated § 1681s–2(b).

■ Second, even assuming that Plaintiff could raise the § 1681s–2(b) argument for the first time on a motion to reconsider, the court finds that Plaintiff has not produced sufficient evidence to create a genuine issue of material fact as to whether Providian violated § 1681s–2(b). A furnisher of information, such as Providian, has a duty under § 1681s–2(b) after it receives notice of a dispute pursuant to § 1681i(a)(2). 15 U.S.C. § 1681s–2(b)(1). Section 1681i(a)(2) requires a consumer reporting agency to notify a furnisher of information of a dispute where a consumer

---

1. Plaintiff does not state in her Motion to Reconsider whether she brings this Motion pursuant to Federal Rule of Civil Procedure 59(e) or 60(b). If Plaintiff brings this Motion pursuant to Rule 59(e), it would be untimely because Plaintiff filed this Motion more than ten days after entry of the court's January 19, 2001 order. Thus, the court will construe Plaintiff's Motion as a Rule 60(b) motion.

has notified the consumer reporting agency of the dispute. 15 U.S.C. § 1681i(a)(2). Therefore, a furnisher of information has no duty under § 1681s–2(b) until a consumer reporting agency, and not a consumer, provides notice to the furnisher of information of a dispute. *DiMezza*, 103 F.Supp.2d at 1300; *Carney*, 57 F.Supp.2d at 502. Plaintiff does not allege in her complaint, nor has she presented any evidence to show, that any consumer reporting agency provided Providian with notice of her dispute. Therefore, even assuming that the court would consider this argument raised for the first time on Plaintiff's Motion to Reconsider, the court finds that Plaintiff has failed to establish a claim under § 1681s–2(b) against Providian.[2]

Accordingly, Plaintiff's Motion to Reconsider the Court's Order Dismissing Defendant Providian Financial Services (doc # 36) is DENIED.

---

2. The court also notes that although some federal courts have recognized a private right of action for a consumer under subsection (b) of § 1681s–2, the plain language of the statute clearly provides that no private right of action exists for a violation under subsection (a) of § 1681s–2. 15 U.S.C. § 1681s–2(c).