**Cheryl L. HASVOLD, Plaintiff,**

v.

**FIRST USA BANK, N.A., d/b/a First USA, a Bank One Company, Defendant.**

No. 01–CV–146–J.

United States District Court,
D. Wyoming.

Jan. 30, 2002.

---

Stephen Joseph Darrah, Darrah & Darrah, Powell, NY, for Plaintiff.

Thomas A. Nicholas, III, Hirst and Applegate, Cheyenne, WY, Charles B. Hecht, Monica L.C. Lester, Hamil/Hecht LLC, Denver, CO, for Defendant.

## ORDER GRANTING DEFENDANT USA BANK'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and ORDER DENYING PLAINTIFF'S MOTION TO REMAND TO STATE COURT

ALAN J. JOHNSON, District Judge.

The Motion to Dismiss for Failure to State a Claim filed by defendant First USA Bank, N.A., the opposition to the motion by plaintiff and her companion motion to remand to state court, and the defendant's further reply and response to the plaintiff's motion to remand have all come before the Court for consideration, having been submitted to the Court upon the parties' written submissions. The Court, having reviewed the parties' written submissions, the pleadings of record, the applicable law, and being fully advised in the premises, FINDS that the defendant's motion to dismiss for failure to state a claim should be GRANTED and that the plaintiff's motion to remand to state court should be DENIED, for the reasons stated below.

### Background

The plaintiff has filed an amended complaint in the above captioned matter. Plaintiff, a resident of Park County, Wyoming, has sued the defendant, a national bank authorized to do business in Delaware, for claims arising after she began to receive credit card statements from the defendant at her Cody, Wyoming address for an account she never opened or authorized to be opened. Amended Complaint, ¶¶ 1, 2 and 4. The Amended Complaint alleges that after plaintiff received these statements, she contacted the defendant's representative by telephone, explaining that she had not opened any kind of account with the defendant, that the charges were not hers and that there must be a mistake. A.C. at ¶ 6. Paragraph 7 states: "Each time she spoke with a representative from the Defendant Bank, the representative explained that the account and its current balance originally belonged to another person and the charges were made months and years prior. The representative for Defendant then incorrectly stated that because the other account holder indicated that the charges were Plaintiffs, [sic], a new account was opened in Plaintiff's name, and that Plaintiff would be responsible to pay for those charges plus interest even though it may not be her account."

The Amended Complaint alleges that during the summer of 2000, plaintiff and her husband applied for a small business loan at the First Interstate Bank in Cody, Wyoming. Upon receiving a credit report, First Interstate's bank officer informed

plaintiff that they could not receive financing because plaintiff's credit report indicated she had a credit card delinquency with the defendant bank amounting to $8,309.00.

Plaintiff applied for another small business loan in July 2000, with Crossroads Financial. She alleges "[u]pon pulling the credit report for Plaintiff, it was brought to the loan officer's attention that the erroneous account at Defendant Bank was seriously delinquent. When the loan officer inquired further about the nature of the account, she was erroneously told that the account was a fraudulent account." A.C. at ¶ 11.

After plaintiff received notice from First Interstate Bank, she requested her credit report from Experian. The report indicated that plaintiff was delinquent in paying for credit at First USA Bank in the amount of $8,309 and that the account had been closed. After reviewing the credit report, plaintiff's attorney wrote the Fraud Division of First USA Bank, July 24, 2000 by certified mail, explaining the circumstances and noting that plaintiff had not authorized the account with First USA Bank, complaining that plaintiff and her husband were suffering economically due to the negative erroneous credit reference by the defendant bank on her credit report, and requesting that the matter be investigated further. A.C. at ¶¶ 13, 14. No response was received by plaintiff or her attorney from the defendant to this letter. Plaintiff alleges that the defendant also did not notify any consumer credit reporting company or collection agency that the account was in dispute, and instead turned the account over to a collection agency for collection.

The plaintiff's amended complaint asserts claims for libel, interference with prospective advantage, invasion of privacy, and violation of the Fair Credit Reporting Act (15 U.S.C. § 1681 *et seq.*). The defen-

dant has moved to dismiss the plaintiff's claims for failure to state a claim. Defendant contends that the Fair Credit Reporting Act ("FCRA") comprehensively regulates credit reporting agencies, those who furnish credit information to credit reporting agencies, and users of the credit information. The FCRA remedial scheme is carefully crafted and expressly preempts plaintiff's state law claim. The FCRA also provides that only certain enumerated federal and state agencies and officials may sue for the violations of the FCRA alleged by plaintiff in this action. As a matter of law, defendant argues that all of plaintiff's claims must be dismissed.

In response, plaintiff alleges that the defendant reported information about the account which it knew or had reason to know was false and that those who received the false information would report it to others. She asserts that after numerous contacts to the defendant about the erroneous account with defendant, the defendant reported the negative credit information to consumer credit reporting agencies and procured the services of a collection agency for the purposes of leveraging payment from plaintiff on an account it knew or had reason to know plaintiff did not open and which was not a debt of plaintiff. The attempt by defendant to secure payment through a collection agency was an attempt to intimidate, harass and wrongfully force her into paying for a debt she did not incur through an abuse of a legal process. Plaintiff's response, at 5. She further asserts that the false credit reporting by defendant was malicious and with the intention of harming her name, reputation, and good credit standing.

### Standard for Motions to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss may be granted for failure to state a claim upon which relief can be granted. A

dismissal under Fed.R.Civ.P. 12(b)(6) will be upheld when it appears that the plaintiff can prove no set of facts in support of the claim(s) that would entitle her to relief, accepting all well pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff. *Sutton v. United Air Lines, Inc.*, 130 F.3d 893, 896–897 (10th Cir.1997), citing and quoting *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir.)(in turn quoting *Fuller v. Norton*, 86 F.3d 1016, 1020 (10th Cir.1996)), cert. denied, 522 U.S. 812, 118 S.Ct. 55, 139 L.Ed.2d 19 (1997).

### Discussion

In her response to the defendant's motion to dismiss, plaintiff concedes that she cannot sue the defendant pursuant to 15 U.S.C. § 1681s–2(b), because the complaint does not allege that plaintiff reported the disputed account information to the credit bureau. She argues the FCRA claim should be dismissed without prejudice until and unless facts reveal that the protection of the FCRA has been triggered. Plaintiff's response at 7.

 Plaintiff further argues that the defense of federal preemption of state law is the only basis for removal of the action from state court and that because no federal question was presented at the time of removal, the matter should be remanded to state court. Plaintiff disagrees with the defendant's assertion that plaintiff's state law claims are preempted. She argues that, considering 15 U.S.C. §§ 1681h(e) and 1681t(a) in tandem, her state law claims for defamation and invasion of privacy, as to false information furnished with malice or willful intent to injury the consumer, are not preempted.

The defendant disagrees with plaintiff's interpretation of the applicable statutes. The defendant argues that the plaintiff's complaint must be assessed at the time of removal, and that the applicable federal statutory scheme clearly preempts her claims against the defendant, who is a furnisher of information under the FCRA. Defendant disagrees with plaintiff's argument that 15 U.S.C. § 1681t(a) does not annul, alter, affect or exempt state law except to the extent that state law is inconsistent with the FCRA, and then only to the extent of the inconsistency. Instead, defendant asserts that the introductory language of 15 U.S.C. § 1681t(a), "Except as provided in subsections (b) and (c) of this section," read together with subsection (b)(1)(F), makes clear that the limitation provision of 15 U.S.C. § 1681t(a) does not apply to the preemption provision in 15 U.S.C. § 1681t(b)(1)(F).

Title 15, Section 1681t, entitled "Relation to state laws" provides in part:

(a) In general

**Except as provided in subsections (b) and (c) of this section,** this subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the law of any State with respect to the collection, distribution, or use of any information on consumers, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.

(b) General exceptions

**No requirement or prohibition may be imposed under the laws of any State—**

(1) with respect to any subject matter regulated under—

(A) subsection (c) or (e) of section 1681b of this title, relating to the prescreening of consumer reports;

(B) section 1681i of this title, relating to the time by which a consumer reporting agency must take any action, including the provision of notification to a consumer or other person, in any procedure related to the disput-

ed accuracy of information in a consumer's file, except that this subparagraph shall not apply to any State law in effect on September 30, 1996;

(C) subsections (a) and (b) of section 1681m of this title, relating to the duties of a person who takes any adverse action with respect to a consumer;

(D) section 1681m(d) of this title, relating to the duties of persons who use a consumer report of a consumer in connection with any credit or insurance transaction that is not initiated by the consumer and that consists of a firm offer of credit or insurance;

(E) section 1681c of this title, relating to information contained in consumer reports, except that this subparagraph shall not apply to any State law in effect on September 30, 1996; or

**(F) section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply—**

(i) with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996); or

(ii) with respect to section 1685.25(a) of the California Civil Code (as in effect on September 30, 1996)[.]

. . . . .

15 U.S.C. § 1681t (emphasis supplied).

Section 1681s–2 discusses the responsibilities of furnishers of information to consumer reporting agencies. This section provides:

(a) Duty of furnishers of information to provide accurate information

(1) Prohibition

(A) Reporting information with actual knowledge of errors.

A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or consciously avoids knowing that the information is inaccurate.

(B) Reporting information after notice and confirmation of errors

A person shall not furnish information relating to a consumer to any consumer reporting agency if—

(i) the person has been notified by the consumer, at the address specified by the person for such notices, that the specific information is inaccurate; and

(ii) the information is, in fact, inaccurate.

(C) No address requirement

A person who clearly and conspicuously specifies to the consumer an address for notices referred to in subparagraph (B) shall not be subject to subparagraph (A); however nothing in subparagraph (B) shall require a person to specify such an address.

(2) Duty to correct and update information

A person who—

(A) regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and

(B) has furnished to a consumer reporting agency information that the person determines is not complete or accurate,

shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided

by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

(3) Duty to provide notice of dispute

If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer.

(4) Duty to provide notice of closed accounts

A person who regularly and in the ordinary course of business furnishes information to a consumer reporting agency regarding a consumer who has a credit account with that person shall notify the agency of the voluntary closure of the account by the consumer, in information regularly furnished for the period in which the account is closed.

(5) Duty to provide notice of delinquency of accounts

A person who furnishes information to a consumer reporting agency regarding a delinquent account being placed for collection, charged to profit or loss, or subjected to any similar action shall, not later than 90 days after furnishing the information, notify the agency of the month and year of the commencement of the delinquency that immediately preceded the action.

(b) Duties of furnishers of information upon notice of dispute

(1) In general

After receiving notice pursuant to section 1681(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(1) of this title;

(C) report the results of the investigation to the consumer reporting agency; and

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

(2) Deadlines

\* \* \* \* \* \*

(c) Limitation on liability

Sections 1681n and 1681o of this title do not apply to any failure to comply with subsection (a) of this section, except as provided in section 1681s(c)(1)(B) of this title.

**(d) Limitations on enforcement**

**Subsections (a) of this section shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials and the State officials identified in that section.**

15 U.S.C. § 1681s–2 (emphasis supplied).

While the Court has not located any Tenth Circuit law directly on point and the parties have identified none, the Court believes that the foregoing provisions make clear that the FCRA regulates actions against entities that furnish information to consumer reporting agencies. Subsection (a) of 15 U.S.C. § 1681s–2 provides that furnishers of information do have a duty to furnish accurate information. See *Quigley v. Pennsylvania Higher Education Assistance Agency,* 2000 WL 1721069 (N.D.Cal. 2000). Subsection (b) applies to the duties

of furnishers of information upon notice of a dispute. *Id.* It is undisputed that in this case, subsection (b) would not apply as no notice of a dispute by plaintiff was ever given to a consumer reporting agency.

Plaintiff concedes that she cannot sue the defendant under a federal claim pursuant to 15 U.S.C. § 1681s–2(b). Plaintiff's response at 7. It also appears that she concedes she states no cause of action under 15 U.S.C. § 1681s–2(a), as enforcement of that provision is delegated to state and federal agencies and officers.

■ Plaintiff argues, however, that notwithstanding the language of the FCRA, her state law claims for defamation/libel and invasion of privacy are not preempted, in that she has alleged that false information was furnished by defendant with malice or willful intent to injure the consumer. The Court believes, however, the plaintiff misunderstands the statutory language permitting a consumer to bring a private cause of action against a furnisher of information under FCRA for a willful failure to comply with duties imposed upon furnishers of information under the FCRA. For this provision to apply, the FCRA must be triggered in the first instance to provide a basis for liability against the furnisher of information. Plaintiff has conceded that she has no action against the defendant as a furnisher of information under 15 U.S.C. § 1681s–2. See *Quigley v. Pennsylvania Higher Education Assistance Agency,* 2000 WL 1721069, *2, which cites and quotes in a parenthetical, *DiMezza v. First USA Bank Inc.,* 103 F.Supp.2d 1296, 1299 (D.N.M.2000)(stating "It is without a doubt, ... that § 1681s–2(d) under the subtitle defining the duties of furnishers of information, by its language, exclusively limits enforcement of the accurate information provisions under § 1681s–2(a) to federal and state officers thus precluding any action under sections 1681n and 1681o."). The *Quigley* court further stat-

ed, responding to plaintiff's arguments that even if he cannot sue under the FCRA, he retained a private right of action under the California Civil Code:

The FCRA specifically provides that "[n]o requirement or prohibition may be imposed under the laws of any State— (1) with respect to the subject matter regulated under —— ... (F) section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). This section prohibits the state from regulating the furnishing of information to consumer protection agencies. Subsection (F) goes on, however, to exclude from its reach California Civil Code section 1785.25(a). Since section 1785.25(a) is expressly excluded from the FCRA preemption provision, the question is whether plaintiff has a private right of action under the California Civil Code section 1785.25(a).

Section 1785.25(a) provides that a "person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ.Code § 1785.25(a). Subsection (g) of 1785.25 provides further that a "person who furnishes information to a consumer credit reporting agency is liable for failure to comply with this section, unless the furnisher establishes by a preponderance of the evidence that, at the time of the failure to comply with this section, the furnisher maintained reasonable procedures to comply with those provisions." Cal. Civ.Code § 1785.25(g). In addition, Civil Code section 1785.31 provides a private right of action for any person who suffers damages from a violation of the California Consumer Credit Act. Cal. Civ.Code § 1785.31(a). Subsection (g) and section

1785.31, however, are not included in the FCRA's exception to its preemption provision. That provision only exempts California Civil Code section 1785.25(a). **Thus, based on a plain reading of the FCRA, any private right of action under the California Civil Code based on the wrongful acts of a "furnisher of information" is preempted by the FCRA. [footnote omitted]. This conclusion is consistent with the expressed intent of Congress to have the conduct of furnishers of information regulated exclusively by governmental entities.**

*Quigley v. Pennsylvania Higher Education Assistance Agency,* 2000 WL 1721069, *3 (emphasis supplied).

Similar arguments were considered by the district court in *Jaramillo v. Experian Information Solutions, Inc.,* 155 F.Supp.2d 356 (E.D.Pa.2001). In that case, the district court determined that the FCRA preempted state causes of action relating to the responsibilities of persons who furnish information to consumer reporting agencies. "The plain language of section 1681t(b)(1)(F) clearly eliminated all state causes of action against furnishers of information, not just ones that stem from statutes that relate specifically to credit reporting. To allow causes of action under state statutes that do not specifically refer to credit reporting, but to bar those that do, would defy the Congressional rationale for the elimination of state causes of action." *Id.,* 155 F.Supp.2d at 362.

Under FCRA, the duties of furnishers of information to consumer reporting agencies are set forth in 15 U.S.C. § 1681s–2. This provision identifies two general types of obligations owed by furnishers of information:

> ... those addressing their duty "to provide accurate information" to credit reporting agencies, as stated in Section 1681s–2(a); and their duty under Section 1681s–2(b), upon receiving notice of consumer disputes from reporting agencies, to investigate said disputes and report the results to consumer reporting agencies.

See *Fino v. Key Bank of New York,* 2001 WL 849700 (W.D.Pa.2001). While this opinion is a magistrate judge's report and recommendation, its analysis is useful. The *Fino* opinion and analysis will be quoted at length:

> Regarding the first class of duties, Section 1681s–2(a) provides in relevant part:

> > A [furnisher] shall not furnish information ... to any consumer reporting agency if ... the [furnisher] has been notified by the consumer ... that [the] specific information is inaccurate ... and ... the information is, in fact, inaccurate.

> > . . . . .

> > A [furnisher] who ... has furnished to a consumer reporting agency information that the [furnisher] determines is not complete or accurate [, moreover,] ... shall promptly notify the consumer reporting agency of that determination ... and shall not thereafter furnish to the agency any of the information that remains not complete or accurate. *See* §§ 1681s–2(a)(1)(B), 1681s–2(a)(2).

> The FCRA dictates that these and the other provisions of Section 1681s–2(a) are to be "enforced exclusively ... by the Federal agencies and officials and [certain] State officials...." *See* § 1681s–2(d). Under this provision, the Act "grants *the FTC exclusive enforcement power over*" Section 1681s–2(a), and "*there is no private right of action for a violation of*" the Section. See *Olexy v. Interstate Assurance Co.,* 113 F.Supp.2d 1045, 1047 (S.D.Miss.2000) (citations and internal quotations omit-

ted, emphasis added); *Quigley v. Pennsylvania Higher Educ. Assistance Agency*, 2000 WL 1721069, *2 (N.D.Cal. Nov.08, 2000) (unpublished opinion) (same).

Regarding the second type of duties owed by furnishers, those regarding the duty to investigate consumer disputes, Section 1681s–2(b) provides in relevant part:

> After receiving notice pursuant to section 1681i(a)(2), [which requires a consumer reporting agency to notify the furnisher regarding customer disputes within five days of the reporting agency's receiving notification from the consumer of the same,] ... the [furnisher] shall—
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency ...;
>
> (C) report the results of the investigation to the consumer reporting agency; and
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the [furnisher has] furnished the information....

*See* § 1681s–2(b)(1).

Most of the courts considering the issue have concluded that Section 1681s–2(b), unlike Section 1681s–2(a), may form the basis for a private cause of action, so long as the plaintiff shows that the furnisher "received notice from a *consumer reporting agency*," as opposed to the plaintiff alone, "that the credit information is disputed." *See, e.g., Dornhecker v. Ameritech Corp.*, 99 F.Supp.2d 918, 928–29 (N.D.Ill.2000) (emphasis in original) (dismissing without prejudice the plaintiff's claim under 1681s–2(b) because his pleadings alleged

that he, not a consumer reporting agency, notified the furnisher of the dispute). [footnote omitted].

The District Court need not reach the issue of whether a private claim can be stated under Section 1681s–2(b). This is true because, based on the facts described in the Amended Complaint, the Plaintiff's claims undeniably fall within provisions stated in Section 1681s–2(a).

As noted above, the Plaintiff alleges that she first contacted Key Bank directly in May 1998 to complain of the inaccurate information being communicated in the Reporting Agencies' reports. *See* discussion *supra* at 4. She also expressly alleges that, within approximately two months of her first complaint to Key Bank, the Defendant had conducted an investigation of the matter and issued a letter to the Reporting Agencies stating that "[*all references to charge-offs and bankruptcies should be deleted from her credit reports] ....*" *See id.* (emphasis added). The remainder of her allegations, then, address either: (a) Key Bank's failure thereafter to "ensur[e] that the misinformation it supplied ... ha[d] been adequately corrected," *see id.*, or (b) the Defendant's having continued to report the inaccurate information to the Reporting Agencies, despite its previously having detected and reported the error. See Am. Compl. at ¶ 60 ("On January 29, 1999, the Plaintiff was informed by ... Key Bank ... that [it] would continue to report her credit information as it was currently being reported and would not make any changes.") [footnote omitted]

These claims, as well as the alleged facts leading up to them, fall squarely within the provisions of Section 1681s–2(a). As noted above Section 1681s–2(a) provides that, if a furnisher *"has been notified by the consumer "*that information regarding the consumer "is inaccu-

rate" and *"the information is, in fact, inaccurate,"* the furnisher shall not provide it to any credit reporting agency. *See id.,* § 1681s–2(a)(1)(B)(i)–(ii) (emphasis added). This provision describes exactly what happened in the instant case. The Plaintiff's own pleadings assert that, when she first learned that Key Bank was reporting incorrect information, she notified the institution of the same.... Within two months of her first contact, Key Bank issued a letter to the Reporting Agencies "stating that all references to charge-offs and bankruptcies should be deleted from her credit report[s]." ...

What happened thereafter is also governed by Section 1681s–2(a). The Section contains provisions specifically addressing a furnisher's "[d]uty to correct and update information," which state:

> A [furnisher] who ... has furnished to a consumer reporting agency *information that the [furnisher] determines is not complete or accurate ... shall promptly notify the consumer reporting agency of that determination ... and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.*

*See* § 1681s–2(a) (emphasis and double-emphasis added).

Key Bank's duties to correct information it determined to be inaccurate, and to refrain from continuing to reporting such known, inaccurate information, are expressly addressed by the above-quoted provisions. *See id.* Unfortunately for the Plaintiff, though, the enforcement of these provisions is exclusively reserved to the FTC; there is no private right of action....

Recognizing that a private claim under Section 1681s–2(a) fails, the Plaintiff attempts to "shoehorn" her claims against Key Bank into Section 1681s–2(b).... Specifically, Plaintiff's counsel looks to the provisions in Section 1681s–2(b) that require a furnisher, upon notice from a reporting agency, to investigate consumer disputes and report the results to reporting agencies....

In this magistrate judge's opinion, the Plaintiff's attempt to massage her averments into Section 1681s–2(b) tortures the plain language of the Act. Plaintiff's counsel would have the court view her alleged complaints to the Reporting Agencies, regarding inaccuracies already detected and reported by Key Bank, as implicating a new duty to investigate. What precisely Key Bank was to investigate, when it had already reviewed the Plaintiff's information in July 1998 and notified the Reporting Agencies it was inaccurate, is beyond the court's comprehension.

This is not to say that Key Bank's actions, as alleged by the Plaintiff, were in full compliance with the FCRA. Ms. Fino expressly avers that the Defendant was negligent in "not ensuring that the misinformation it supplied to the [Reporting Agencies] ha[d] been *adequately corrected"*, and she implicitly asserts that Key Bank willfully *"continued to issue false information"* after learning of its errors.... But the FCRA provisions addressing Key Bank's "[d]uty to *correct and update information"* and to *"not [continue] ... furnish[ing] ... information that remain[ed] not complete or accurate"* fall under Section 1681s–2(a), a section for which there is no private right of action. *See* §§ 1681s–2(a)(1)(B), 1681s–2(a)(2) (emphasis added); *see also* § 1681s–2(d).

Plaintiff's counsel also appears to urge that, under the circumstances presented here, equity compels the recognition of Ms. Fino's right to a private action.... Regardless of the equities, however, the court is not at liberty to rewrite the statute or manufacture a private right of

action against this Defendant. To ignore the provisions in Section 1681s–2(a) expressly addressing the duties allegedly breached by Key Bank would be to disregard the "well-settled canon of statutory construction that courts should *disfavor interpretations of statutes that render language superfluous." See U.S. v. Voigt,* 89 F.3d 1050, 1087 (3d Cir.1996) (citation and internal quotations omitted, emphasis added).

Simply stated, under any possible reading of the Amended Complaint, Section 1681s–2(a) squarely addresses the duties allegedly breached by Key Bank. The enforcement of that Section is reserved exclusively to an agency of the federal government. Thus, the Plaintiff's claims against Key Bank should be dismissed.

*Fino v. Key Bank of New York,* 2001 WL 849700, \*4–\*7 (W.D.Pa.2001) (most citations and footnotes omitted; emphasis and italics from original). See also e.g., *Yelder v. Credit Bureau of Montgomery, L.L.C.,* 131 F.Supp.2d 1275, 1283 (M.D.Ala.2001, reconsideration den.2001)(no private right of action for violation of § 1681s–2); *Bacon v. Southwest Airlines Co.,* 1999 WL 134569, \*3 (N.D.Tex.1999) (no private claim against furnisher of information under FCRA).

Plaintiff's case is not unlike the *Fino v. Key Bank of New York* case cited above. The plaintiff's complaints against the defendant here also clearly fall within the purview of Section 1681s–2(a), a section for which there is no private right of action. This review of her allegations and interpretation is consistent with a determination that plaintiff's claims are preempted by federal law pursuant to §§ 1681t(b)(1)(F) and 1681h.

The Court does recognize that there is not complete agreement and unanimity in judicial discussions regarding the nature of the FCRA preemption with few discussions specifically addressing preemption of state law actions against furnishers of information.[1] However, a useful discussion and consideration of arguments similar to those advanced by plaintiff here is offered by the district court in *Jaramillo v. Experian Information Solutions, Inc.,* 155 F.Supp.2d 356, (E.D.Pa.2001)(reconsideration granted June 20, 2001).

In *Jaramillo v. Experian Information Solutions, Inc.,* the court considered plaintiff's arguments that Section 1681t should be read in conjunction with section 1681h(e), which provides only a qualified immunity for credit reporting agencies, users, and furnishers, from suit in defamation, invasion of privacy, or negligence unless false information was furnished with malice of willful intent to injure such consumer. The plaintiff there had argued that because Congress did not amend the language of § 1681h when FCRA was amended in 1996 to address furnishers of information in the act, her claims of willful and intentional failure to investigate information disputed by the consumer should stand. That court disagreed, and stated:

---

1. See e.g., *Yelder v. Credit Bureau of Montgomery, L.L.C.,* 131 F.Supp.2d 1275, 1284 (M.D.Ala.2001); *Carney v. Experian Information Solutions, Inc.,* 57 F.Supp.2d 496, 503 (W.D.Tenn.1999) ["Because duties, responsibilities, and liabilities of furnisher of information upon receipt of notice from a consumer are regulated under § 1681s–2(a) & (c) of the FCRA, there is preemption of plaintiff's state law claim under the [Tennessee Credit Protection Act.] See 15 U.S.C. § 1681t(b)(1)(F)."];

*Dornhecker v. Ameritech Corp.,* 99 F.Supp.2d 918, 924–26, 930–32 (N.D.Ill.2000) [finding private remedy for individual consumers against a furnisher of information under § 1681s–2(b) and that state law common law claims, such as negligence, defamation or invasion of private not preempted by Section 1681t(b)(1)(F) of the FCRA]; *Elliott v. TRW, Inc.,* 889 F.Supp. 960 (N.D.Tex.1995) (the same; predates 1996 amendments to FCRA).

While Congress did not specifically provide in the 1997[sic] amendments that section 1681t supercedes 1681h, it is clear from the face of section 1681t(b)(1)(F) that Congress wanted to eliminate all state causes of action "relating to the responsibilities of persons who furnish information to consumer reporting agencies." [footnote omitted] Any other interpretation would fly in the face of the plain meaning of the statute.

\* \* \* \* \* \*

The plain language of section 1681t(b)(1)(F) clearly eliminated all state causes of action against furnishers of information, not just ones that stem from statutes that relate specifically to credit reporting. To allow causes of action under state statutes that do not specifically refer to credit reporting, but to bar those that do, would defy the Congressional rationale for the elimination of state causes of action.

*Jaramillo v. Experian Information Solutions, Inc.*, 155 F.Supp.2d at 361–362 (some citations and footnotes omitted).

The Court finds that federal law under the FCRA preempts plaintiff's claims against the defendant relating to it as a furnisher of information. The Court finds that the defendant's motion to dismiss should be granted for failure to state a claim. The Court also finds that the plaintiff's motion to remand to state court should be denied for the reasons stated above and for the further reason that the plaintiff's motion to remand is not timely under 28 U.S.C. § 1447(c), having sought to remand this action to state court more than 30 days after the filing of the notice of removal under section 1446(a).

Accordingly, for the foregoing reasons, it is therefore

**ORDERED** that defendant's motion to dismiss for failure to state a claim shall be, and is, **GRANTED. It is further**

**ORDERED** that all claims asserted by plaintiff against the defendant shall be, and are, **DISMISSED WITH PREJUDICE. It is further**

**ORDERED** that plaintiff's motion to remand to state court shall be, and is, **DENIED.**

**Judgment shall be entered accordingly.**