**Alex AKLAGI and Valentina G. Aklagi, Plaintiffs,**

v.

**NATIONSCREDIT FINANCIAL Services Corporation, d/b/a EquiCredit Corporation of Virginia, Defendant.**

Case No. 01–2244–JPO.

United States District Court, D. Kansas.

April 22, 2002.

John R. Campbell, Loughlin, Johnson & Campbell, Carlos D. Romious, Kansas City, MO, for Plaintiffs

Elizabeth Drill Nay, Thomas M. Martin, Scott M. Brinkman, Scott A. Wissel, Lewis, Rice & Fingersh, L.C., Kansas City, MO, for Defendant.

### MEMORANDUM & ORDER

O'HARA, United States Magistrate Judge.

### I. Introduction.

This case arises from an identity theft incident. It involves a claim under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, and a state law claim of defamation.[1] The defendant, NationsCredit Financial Services Corporation, d/b/a EquiCredit Corporation of Virginia ("EquiCredit"), has filed a motion for summary judgment **(doc. 39).** The court

has reviewed EquiCredit's motion and memorandum in support (doc. 40), the memorandum in opposition filed by the plaintiffs, Alex Aklagi and Valentina G. Aklagi (doc. 45), plaintiffs' supporting exhibits (doc. 46), and EquiCredit's reply memorandum (doc. 47). For the reasons explained below, EquiCredit's motion for summary judgment is granted and this case is dismissed.

### II. Facts.[2]

In the spring of 1999, an individual purporting to be plaintiff Valentina Aklagi (the "thief") obtained a mortgage loan from EquiCredit to purchase real estate located at 536 Maryland Avenue, North Oak, Virginia. During the process of obtaining the loan, the thief produced a number of fraudulent documents, including: (1) a Virginia identification card containing the thief's picture and signature as Valentina Aklagi; (2) counterfeit copies of 1997 and 1998 W–2 wage and tax statements for Tina V. Aklagi indicating that Tina V. Aklagi lived in Elizabeth City, North Carolina, and worked for Textran Systems in Chesapeake, Virginia; (3) copies of stubs from checks issued by Textran Systems to Tina V. Aklagi dated March 26, 1999, and April 9, 1999; (4) bank statements from First Advantage Federal Credit Union in Newport News, Virginia, indicating that Tina V. Aklagi lived in Elizabeth City, North Carolina, and had various accounts at the credit union; and (5) a verification of employment form stating that Mrs. Aklagi worked at Textran Systems which was signed under penalty of law by an individual named Carol Fields as payroll assistant at Textran Systems.

---

1. Plaintiffs also originally asserted a claim against defendant for defendant's alleged negligence in making the loan to the thief (Complaint, doc. 1 (Count I)). However, plaintiffs have abandoned their negligence claim (Pretrial Order, doc. 41).

2. Consistent with the well-established standard for summary judgment, the facts are uncontroverted or, if controverted, are construed in the light most favorable to the Aklagis, the non-moving parties.

Discrepancies existed in some of the loan documents. For example, on the thief's loan application, the thief reported owning real estate with a value of $390,000, but the real estate schedule only listed real estate with a total value of $255,000. EquiCredit's records do not indicate that anyone processing the loan questioned this discrepancy.

Also on the loan application, the thief reported that she had been present at her job for a period of five years at Chesapeake, Virginia, and yet she reported that she had resided at 6609 West 123rd Street, Overland Park, Kansas, within two years prior to the date of the loan application. EquiCredit obtained Mrs. Aklagi's credit report from Equifax Information Services. The credit report stated that Mrs. Aklagi was employed at Providence Medical Center and that her address was 6609 West 123rd Street, Overland Park, Kansas. Michelle Flor, an employee of EquiCredit, questioned the applicant's "work situation when in Kansas." However, EquiCredit's records do not explain the discrepancy between these addresses.

The Equifax credit report also stated that Mrs. Aklagi's birthdate was November 8, 1964. However, a visual verification of identification form reflects that the thief produced a Veterans Administration identification card containing a birthdate of November 15, 1964.

After the thief answered a variety of questions to explain the discrepancies in the various loan documents, the thief closed on the loan and paid $9,000 in cash at the closing. According to EquiCredit's expert witness, James F. Lynn, EquiCredit acted in accordance with its own internal lending policies and procedures, as well as generally accepted practices and procedures common to the mortgage industry during the entire credit underwriting process. Lynn states that the thief perpetrated a sophisticated pattern of fraud and deception against EquiCredit that was deliberately designed to sabotage the normal and appropriate due diligence exercised by EquiCredit with regard to this mortgage loan. Nothing arose during the underwriting process that would have alerted Equi-Credit that a fraud was being perpetrated. The Aklagis have not identified any witness, expert or otherwise, who controverts Lynn's above-described testimony.

In late 1999, the Aklagis attempted to obtain financing through First Western Mortgage Company. They were unable to do so because of two foreclosures on their credit record, one by EquiCredit and the other by NovaStar.[3] Mr. Aklagi then contacted EquiCredit, and it was by this means that EquiCredit first became aware an alleged fraud had been committed. The Aklagis were instructed to contact EquiCredit's attorneys with the firm of Bierman & Geesing. According to Mr. Aklagi, however, EquiCredit's lawyer refused to take information from him, ignored him, and treated him like a "crook." Therefore, in December of 1999, the Aklagis hired their own attorney, Carlos Romious.

EquiCredit received a letter from Romious dated December 9, 1999. The letter stated that Romious was an attorney representing the Aklagis, and that "[a]mong other serious concerns, we believe that the ... loan involves illegal identity theft." The letter gave no address or contact information for the Aklagis, but instead directed that "any communication concerning [the Aklagis] and any matters directly or indirectly related to said loan should be directed to our office."

---

**3.** NovaStar's attorney took the steps necessary to remove the disparaging NovaStar information from the Aklagis' credit history.

The Aklagis received a credit report on Mrs. Aklagi from CSC Credit Services, dated January 10, 2000, reflecting that EquiCredit had begun to foreclose on the loan.

On March 11, 2000, Debbie Milligan in EquiCredit's consumer affairs department sent an affidavit of forgery package to Valentina Aklagi. The letter requested that "[i]n order for us to complete the fraud claim, please compose an Affidavit of Fact stating everything you know about this account." Enclosed with the letter was an affidavit of forgery that Milligan also requested Mrs. Aklagi complete and have notarized and returned. The letter also requested that Mrs. Aklagi "include a copy of [her] driver's license with signature and six samples of [her] signature on a separate sheet of paper." The letter indicated that once EquiCredit received those documents, it would research the issue and respond to Mrs. Aklagi.

Milligan sent the letter to Mrs. Aklagi at the address of the subject real estate in Virginia, despite the fact that EquiCredit had been advised that the Aklagis did not live there and did not purchase the property. EquiCredit contends the Virginia address is the only address for Mrs. Aklagi that it had in its "system," presumably meaning its computer system. Mrs. Aklagi's correct Overland Park address would have been in EquiCredit's files by virtue of the Equifax credit report that EquiCredit obtained when it originally processed the loan. However, EquiCredit was unable to locate its loan file. Even though Milligan sent the letter to Mrs. Aklagi at the address in Virginia, Milligan also sent a copy of the letter to Romious, which was consistent with Romious's directive that EquiCredit should send correspondence regarding the Aklagis directly to him. Romious received Milligan's letter. But, neither Romious nor the Aklagis responded to Milligan's letter.

On April 12, 2000, CSC Credit Services issued another credit report for Mrs. Aklagi that reflected a serious delinquency on the EquiCredit account.

On April 18, 2000, Milligan mailed a second letter that was nearly identical to her March 11, 2000–letter. Again, Milligan sent the letter to Mrs. Aklagi at the address in Virginia and sent a copy to Romious. Again, EquiCredit received no response.

Jim Dodd, counsel for EquiCredit, sent a letter directly to Romious on May 8, 2000. The letter referred to Romious's December 9, 1999–letter that claimed the loan was obtained by fraud, and stated that "[w]e have attempted to investigate the claim, however your clients have not cooperated and have not responded to our requests for a forgery affidavit." The letter warned that EquiCredit would proceed with foreclosure if it did not receive a response by May 22, 2000. Once again, neither Romious nor the Aklagis responded.

Dodd called Romious on May 22, 2000 and left a message. But, Romious never returned the call. Susan Dailey of EquiCredit's fraud department also called Romious and left a message, but again Romious did not return her call.

EquiCredit was aware that the Federal Bureau of Investigation was investigating the fraud. However, EquiCredit did not attempt to contact the FBI to determine the status of its efforts.

 During the summer of 2000, the Aklagis sent letters to CBC Credit Services, CSC Credit Services, TRW/Experian, and Trans Union Credit Agency, informing these credit reporting agencies that the EquiCredit account was fraudulent. However, there is no evidence that any credit reporting agency at any time

notified EquiCredit that EquiCredit needed to investigate the matter.[4]

On August 7, 2000, the Aklagis were denied credit from Bank of America, the owner of EquiCredit. The Aklagis were once again informed that they would not be able to obtain a loan unless the EquiCredit mortgage foreclosure was removed from their credit report. Plaintiffs also allege they lost profits due to their inability to purchase three properties because of problems with their credit report.

Based on these facts, the Aklagis assert against EquiCredit a claim under FCRA and a state law defamation claim. EquiCredit seeks summary judgment against the Aklagis on both of these claims.

### III. Applicable Procedural Standards.

Summary judgment is appropriate if the moving party demonstrates there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must view the evidence and all reasonable inferences that may be drawn from that evidence in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is material if, under the applicable substantive law, it is essential to the proper disposition of the claim. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 670–71 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91

---

4. The Aklagis attempt to dispute this statement by virtue of paragraphs 12 and 31 of their statement of facts. But, they have failed to properly support those paragraphs with facts that would be admissible in evidence. Paragraph 12 cites to a letter from CSC Credit Services to Mrs. Aklagi; the letter implies that, pursuant to CSC's standard procedures, CSC would have contacted EquiCredit to verify the account information. Paragraph 31 cites to a portion of a deposition transcript in which Mr. Aklagi testified that CSC told him that it would have been CSC's standard procedure to contact EquiCredit to verify the account information. These statements are classic hearsay, as they are out-of-court statements being offered to prove the truth of the matter asserted. *See, e.g.,* Fed.R.Evid. 801(c). "Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment[.]" *Adams v. American Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir.2000). Therefore, the Aklagis cannot use the letter from CSC or Mr. Aklagi's hearsay testimony to defeat EquiCredit's motion for summary judgment.

Admittedly, the letter from CSC to Mrs. Aklagi could arguably be regarded as a business record of CSC. However, "business records, which normally would be admissible at trial under the hearsay exception, may be considered to avoid summary judgment only if authenticated by a person through whom the exhibits could be admitted into evidence." *Foster v. AlliedSignal, Inc.*, 98 F.Supp.2d 1261, 1265–66 (D.Kan.2000); *see also, e.g., Patterson v. Dahlsten Truck Line, Inc.*, 130 F.Supp.2d 1228, 1234 (D.Kan.2000) (declining to consider a particular business record in ruling on a motion for summary judgment because it was not properly authenticated); *IBP, Inc. v. Mercantile Bank*, 6 F.Supp.2d 1258, 1263 (D.Kan.1998) (citing extensive authority to support this rule of law). In this case, the Aklagis have failed to properly authenticate the letter from CSC as a business record.

Accordingly, much as it might prefer to do otherwise, the court must disregard paragraphs 12 and 31 of the Aklagis' statement of facts because they are not properly supported with facts that would be admissible in evidence.

L.Ed.2d 265 (1986)). In meeting that standard, a movant who does not bear the ultimate burden of persuasion at trial need not negate the other party's claim, but must simply point out to the court that the other party lacks evidence on an essential element of its claim. *Id.* at 671 (citing *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548). Once the movant has met this initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *accord Adler,* 144 F.3d at 671. The nonmoving party may not simply rest upon its allegations to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Lopez v. LeMaster,* 172 F.3d 756, 759 (10th Cir.1999). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671 (internal quotation omitted). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, it must be noted that summary judgment is no longer regarded as a "disfavored procedural shortcut." Instead, summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

IV. Analysis and Discussion.

EquiCredit seeks summary judgment on the Aklagis' FCRA claim on the basis that the Aklagis have failed to produce evidence that a "consumer reporting agency" gave EquiCredit notice that the Aklagis disputed the account, which EquiCredit argues is required to sustain a FCRA claim. EquiCredit seeks summary judgment on the Aklagis' state law defamation claim on the basis that it is preempted by FCRA.

A. *The Aklagis' FCRA Claim.*

FCRA was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit ... in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information[.]" 15 U.S.C. § 1681(b). FCRA places distinct obligations on three types of entities: (1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies. *Carney v. Experian Info. Solutions, Inc.,* 57 F.Supp.2d 496, 500 (W.D.Tenn.1999). In this case, the parties agree that EquiCredit is properly regarded as a furnisher of credit information and, as such, its obligations are set forth in 15 U.S.C. § 1681s–2.

Section 1681s–2 can essentially be broken down into two components. The first component consists of subsections (a), (c), and (d). The second component consists only of subsection (b).

■ Subsection (a) of § 1681s–2 generally imposes on furnishers of credit information a duty to provide consumer reporting agencies with accurate information. Subsections (c) and (d) limit the remedies available for violations of subsection (a). Specifically, subsection (c) eliminates remedies to consumers for violations of subsection (a), and subsection (d) provides that the duties imposed under subsection (a) can be enforced only by government agencies and officials. Therefore, because of subsections (c) and (d), the Aklagis have no private cause of action for EquiCredit's arguable violations of subsection (a). *See, e.g., Hasvold v. First USA Bank,* 194 F.Supp.2d 1228, 1235 (D.Wyo.2002) (citing case law to support the conclusion that there is no private right of action for violations of subsection (a)).

The second component of § 1681s–2, found in subsection (b), does create a private cause of action by a consumer against a furnisher of credit information. *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059–60 (9th Cir. 2002). It requires a furnisher of credit information to conduct an investigation "[a]fter receiving *notice pursuant to section 1681i(a)(2)* of this title of a dispute" regarding the accuracy of information provided to a consumer reporting agency. § 1681s–2(b)(1) (emphasis added). Section 1681i(a)(2) requires a consumer reporting agency to provide a furnisher of credit information with prompt notice of a dispute from any consumer.

Therefore, under the plain language of the statute, the duty of a furnisher of credit information to investigate a credit dispute is triggered only after the furnisher receives notice of the dispute *from a consumer reporting agency*, not just the consumer. Indeed, courts have uniformly reached this conclusion. *See, e.g., Hasvold,* 194 F.Supp.2d at 1236 (reasoning that § 1681s–2(b) provides a private cause of action only if the furnisher received notice from a consumer reporting agency, as opposed to the plaintiff alone, that the credit information was disputed); *Scott v. Amex/Centurion S & T,* Nos. 3:01–CV–1594–H et al., 2001 WL 1645362, at *4 (N.D.Tex. Dec. 18, 2001) ("The duties created by subsection (b) arise ... only after the furnisher receives notice from a consumer reporting agency that a consumer is disputing credit information."); *Fino v. Key Bank,* No. Civ. A. 00–375E, 2001 WL 849700, at *5 (W.D.Pa. July 27, 2001) (reasoning that § 1681s–2(b) provides a private cause of action only if the furnisher received notice from a consumer reporting agency, as opposed to the plaintiff alone, that the credit information was disputed);

*Jaramillo v. Experian Info. Solutions, Inc.,* 155 F.Supp.2d 356, 363 (E.D.Pa.2001) ("[T]o state a cause of action under 1681s–2(b) requires a pleading that a consumer reporting agency notified a furnisher of a dispute...."); *Yelder v. Credit Bureau of Montgomery, L.L.C.,* 131 F.Supp.2d 1275, 1289 (M.D.Ala.2001) ("[A] furnisher of information has no duty under § 1681s–2(b) until a consumer reporting agency, and not a consumer, provides notice to the furnisher of information of a dispute."); *Dornhecker v. Ameritech Corp.,* 99 F.Supp.2d 918, 928–29 (N.D.Ill.2000) ("Section 1681s–2(b) triggers a furnisher's duty to investigate allegedly erroneous information when that furnisher has received notice from a *consumer reporting agency* that the credit information is disputed." (emphasis in original)).

In this case, the Aklagis have failed to produce any admissible evidence to suggest that a consumer reporting agency notified EquiCredit that the Aklagis were disputing the account. The Aklagis have produced evidence that they notified consumer reporting agencies and EquiCredit of the dispute. However, they have failed to make the critical link between the consumer reporting agencies and EquiCredit. In fact, the only admissible evidence regarding this issue is Dodd's testimony that EquiCredit did *not* receive notice of a dispute from any consumer reporting agency. When presented with this evidence, and only this evidence, the only conclusion the court can reach is that EquiCredit did not receive notice of a dispute from any consumer reporting agency. In sum, the Aklagis have failed to raise an issue of material fact regarding whether EquiCredit received notice of the dispute from a consumer reporting agency. Therefore, EquiCredit is entitled to summary judgment on the Aklagis' FCRA claim.[5]

---

**5.** Notably, the Aklagis have known their case was deficient in this respect for months.

Admittedly, this statutory framework may seem troubling because it seems to disregard the significance of the fact that EquiCredit continued to report information regarding this account at a time when it knew the account was disputed. However, consumers such as the Aklagis are, in fact, entitled to some protection from such conduct. Specifically, § 1681s–2(a) prohibits a furnisher of credit information from reporting inaccurate information once it has received notice from the consumer that the information is inaccurate. § 1681s–2(a)(1)(B). However, as discussed previously, there is no private cause of action under this statute because the enforcement of subsection (a) is reserved exclusively to the Federal Trade Commission. §§ 1681s, 1681s–2(c) & (d); *see Hasvold,* 194 F.Supp.2d at 1235 (citing the statutes and case law, and concluding that the FTC has the exclusive enforcement power for violations of § 1681s–2(a)). Thus, although EquiCredit's conduct is statutorily prohibited, the enforcement of this provision is exclusively reserved to the FTC; the Aklagis simply have no private cause of action for it.

## B. *State Law Defamation Claim.*

As earlier indicated, EquiCredit argues that the Aklagis' defamation claim is preempted by FCRA. The statute contains two preemption provisions that arguably apply in this case: (1) § 1681t(b)(1)(F),

which provides furnishers of credit information with absolute immunity; and (2) § 1681h(e), which provides furnishers of credit information with qualified immunity.

### 1. *Preemption Under § 1681t(b)(1)(F).*

Section 1681t(b)(1)(F), the absolute immunity provision, provides:

No requirement of prohibition may be imposed under the laws of any State— ... with respect to any *subject matter regulated under ... section 1681s–2 of this title,* relating to the responsibilities of persons who furnish information to consumer reporting agencies ...

(Emphasis added.) Thus, to the extent that EquiCredit's conduct falls within the "subject matter regulated under ... section 1681s–2," the Aklagis' state law defamation claims against EquiCredit are preempted. In this regard, EquiCredit's conduct must be broken down into two discrete time periods: (1) the time period between when EquiCredit made the loan and when it first received notice of the Aklagis' dispute; and (2) the time period after EquiCredit received notice of the Aklagis' dispute.

■ The court will first discuss the second time period. As discussed above, to the extent that EquiCredit furnished inaccurate information *after* receiving notice of the Aklagis' dispute in late 1999, EquiCredit's conduct in this case falls squarely within § 1681s–2(a)(1)(B) and, therefore, it

EquiCredit specified this fact as a defense at the final pretrial conference in this case on January 30, 2002. (*See* Pretrial Order, doc. 41, at 9 ("Plaintiffs' FCRA claim fails because any duty by defendant to investigate is only triggered upon defendant receiving notice of a dispute from a credit reporting agency, which did not occur here."), 13 (listing as an issue of fact under the Aklagis' FCRA claim, "Whether defendant received notice of a dispute from any credit reporting agency.").) At that time, the court extended the discovery deadline, over EquiCredit's objection, to allow the Ak-

lagis to conduct additional depositions. (*Id.* at 16–17; *see also* Order, doc. 37.) Thus, the Aklagis were on notice that they would need to prove that EquiCredit received notice of the Aklagis' dispute from a credit reporting agency at a time when the Aklagis could have requested leave to conduct additional discovery to obtain this evidence. However, despite notice and an opportunity to request leave to conduct discovery on this issue, the Aklagis have failed to produce evidence to make this critical link.

is "subject matter regulated under ... section 1681s–2 of this title." Accordingly, any state law defamation claim predicated on EquiCredit furnishing inaccurate information to a consumer reporting agency *after* EquiCredit received notice of the Aklagis' dispute is completely preempted by § 1681t(b)(1)(F). *See, e.g., Hasvold,* 194 F.Supp.2d at 1238–39 (concluding that § 1681t(b)(1)(F) preempted the plaintiff's claims against the defendant, who was a furnisher of credit information); *Jaramillo,* 155 F.Supp.2d at 361–62 (same).

■ On the other hand, EquiCredit also furnished inaccurate information to a consumer reporting agency after it made the loan but *before* it received notice of the Aklagis' dispute. That particular conduct is not regulated under § 1681s–2. Admittedly, § 1681s–2(a)(1) prohibits EquiCredit from furnishing information regarding a consumer if EquiCredit "knows or consciously avoids knowing that the information is inaccurate." However, in this case, there is no evidence that EquiCredit knew or consciously avoided knowing that the thief obtained the loan by fraud. The court expresses no opinion regarding whether EquiCredit exercised appropriate diligence in making the loan. However, even if the court were to assume that EquiCredit was negligent because it made the loan to the thief despite all of the discrepancies among the various documents the thief submitted, that would not rise to the level of EquiCredit knowing or consciously avoiding knowing that the loan was fraudulently obtained. Accordingly, any state law defamation claim that is predicated on EquiCredit furnishing inaccurate information to a consumer reporting agency *before* receiving notice of the Aklagis' dispute is *not* regulated under § 1681s–2. Therefore, it is *not* preempted by § 1681t(b)(1)(F). *See, e.g., Dornhecker,* 99 F.Supp.2d at 930–31 (holding that state law claims based on actions "not regulated

by the FCRA" were not preempted by § 1681t(b)(1)(F), but instead, should be analyzed for preemption under § 1681h(e)).

### 2. *Preemption Under § 1681h(e).*

■ Nevertheless, the other preemption provision provides furnishers of credit information with a qualified immunity against state law claims:

> [N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against ... any person who furnished information to a consumer reporting agency ... *except as to false information furnished with malice or willful intent to injure each consumer.*

§ 1681h(e) (emphasis added). Thus, the Aklagis' state law defamation claim against EquiCredit is preempted by § 1681h(e) unless the Aklagis can prove that EquiCredit acted "with malice or willful intent to injure" the Aklagis when EquiCredit furnished inaccurate information to credit reporting agencies.

FCRA does not define the terms malice or willful intent. However,

> courts have interpreted it as requiring a showing that the defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others." Further, for purposes of evaluating whether a defendant is entitled to qualified immunity under Section 1681h(e) in cases of defamation ..., courts use the following definition of malice: a statement will be deemed to have been made with malice if made "with knowledge that it was false or with reckless disregard of whether it was false or not."

*Dornhecker,* 99 F.Supp.2d at 931 (citations omitted); *see also Bruce v. First USA Bank,* 103 F.Supp.2d 1135, 1145–46 (E.D.Mo.2000) (citing a similar standard

requiring "knowledge or reckless disregard for its truth").

As explained above, any claim predicated on EquiCredit furnishing inaccurate information to a consumer reporting agency *after* receiving notice of the Aklagis' dispute is completely preempted by § 1681t(b)(1)(F). Accordingly, the Aklagis' defamation claim can only plausibly be based on the fact that EquiCredit furnished inaccurate information to a consumer reporting agency *before* it received notice of the Aklagis' dispute. The Aklagis have simply failed to produce evidence from which a reasonable juror could infer that EquiCredit acted with malice or willful intent to injure the Aklagis during this time period. Rather, the evidence clearly reflects that EquiCredit mistakenly made a loan to an identity thief. Drawing all inferences in the light most favorable to the Aklagis, the fact that EquiCredit overlooked the discrepancies in the various loan documents might rise to the level of negligence, at best. However, nothing in the record indicates that, up to the time Mr. Aklagi called to alert EquiCredit of the fraud, EquiCredit knew that the information it furnished to credit reporting agencies regarding the loan was false or even that EquiCredit "entertained any doubt regarding the veracity of the information and reported it anyway." *Bruce*, 103 F.Supp.2d at 1146. In sum, the Aklagis have failed to raise an issue of material fact regarding whether EquiCredit furnished information to credit reporting agencies with malice or willful intent to injure the Aklagis. Therefore, the remainder of the Aklagis' defamation claim is preempted by § 1681h(e).

EquiCredit is entitled to summary judgment on the Aklagis' state law defamation claim.

### V. Order.

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1. Defendant EquiCredit's motion for summary judgment (**doc. 39**) is granted.

2. Accordingly, the clerk shall enter judgment pursuant to Fed.R.Civ.P. 58 against plaintiffs Alex Aklagi and Valentina G. Aklagi and in favor of NationsCredit Financial Services Corporation, d/b/a EquiCredit Corporation of Virginia. Plaintiffs shall take nothing and this case is dismissed.

3. The clerk shall mail copies of this memorandum and order to all counsel of record.