**Kent WHISENANT and Linda Whisenant, Plaintiffs,**

v.

**FIRST NATIONAL BANK & TRUST COMPANY, Nowata, Oklahoma, Trans Union, LLC f/k/a Trans Union Corporation and Credit Bureau of Oklahoma City, Inc., Defendants.**

No. 02–CV–09–C.

United States District Court, N.D. Oklahoma.

April 14, 2003.

James M Elias, Brewer Worten Robinett et al, Bartlesville, OK, Robert David Humphreys, Luke James Wallace, Humphreys Wallace Humphreys, Tulsa, OK, David A Szwak, Bodenheimer Jones Szwak & Winchell, Shreveport, LA, for Kent Whisenant, Linda Whisenant, plaintiffs.

Daniel Richard Funk, P Joshua Wisley, Conner & Winters, Tulsa, OK, for First Nat. Bank & Trust Co., Nowata, OK.

Joseph R Farris, F Jason Goodnight, Feldman Franden Woodard Farris & Boudreaux, Tulsa, OK, Paul L Myers, Mark T Craig, Strasburger & Price LLP, Dallas, TX, for Trans Union.

Chris L Rhodes, III, Kerry R Lewis, Rhodes Hieronymus Jones Tucker & Gable, Tulsa, OK, for Credit Bureau of Oklahoma City, Inc.

## ORDER

H. DALE COOK, District Judge.

Before the Court is a motion for summary judgment filed by defendant, First National Bank & Trust Company of Nowata ("FNBN") against plaintiffs, Kent Whisenant and Linda Whisenant, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant contends that there exists no genuine issue of material fact and that it is entitled to summary judgment as a matter of law. After careful consideration of the parties' pleadings, the summary judgment evidence, and the applicable law, the Court GRANTS summary judgment in favor of defendant on plaintiffs' federal law claims and, in its discretion, the Court dismisses plaintiffs' state law claims without prejudice.

*Statement of Facts*

For purposes of FNBN's summary judgment motion, the following facts are either undisputed or reflect the record in the light reasonably most favorable to plaintiffs Kent and Linda Whisenant, the non-moving parties.

FNBN is a lending institution located in Nowata, Oklahoma. As is common practice in the industry, FNBN maintains a reciprocal agreement with certain credit reporting agencies, whereby FNBN provides credit data on its customers and the credit reporting agencies provide access to credit reports of potential FNBN customers. This system facilitates maintenance of reliable credit history information, enabling lending institutions like FNBN to make well-informed credit decisions on loan applications.

Trans Union ("TU") is one of the credit reporting agencies to which FNBN is a subscriber. The Credit Bureau of Oklahoma City ("CBOC") acts as a "middleman" for the exchange of credit data between TU and subscribers like FNBN. Sometime in early 1999, FNBN changed the software it was using to collect and provide its customers' credit data to CBOC and TU. At some point in this conversion process a number of errors occurred that adversely affected plaintiffs' credit history.[1] Numerous other FNBN customers were similarly affected. As would be expected when an error occurs affecting numerous customers, FNBN worked closely with TU and CBOC to correct the errors and to complete the software conversion accurately. Over the course of the next several months, plaintiffs contacted FNBN, CBOC, and TU on many occasions to dispute inaccuracies appearing on their credit report due to the faulty software conversion. Significantly, however, neither CBOC nor TU ever reported plain-

---

1. Determining who was responsible for these errors is not relevant to this ruling because a furnisher of information, like FNBN, is liable under the Fair Credit Reporting Act, discussed *infra*, only for its actions after receiving notice of a customer dispute from a credit reporting agency. Since the errors referred to here obviously occurred before any customer disputed them, they cannot form the basis of FNBN's liability under the Fair Credit Reporting Act.

tiffs' dispute to FNBN.[2]

As a result of the inaccuracies in their credit report, plaintiffs' ability to secure loans was allegedly impaired. Plaintiffs also claim they have suffered various forms of reputational harm and emotional distress caused by the inaccuracies in their credit report.

Plaintiffs filed their complaint on January 3, 2002, seeking damages from FNBN based on alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s–2b, and state law claims for negligence, negligence per se, property damage, impairment of credit rating, defamation, infliction of emotional distress, invasion of privacy, injunctive relief, misrepresentation/statutory deceit, agency and breach of implied covenant of good faith and fair dealing. On December 9, 2002, FNBN filed its motion for summary judgment. Plaintiffs filed an amended response and opposition to defendant's motion for summary judgment on January 22, 2003. Defendant filed its reply on February 3, 2003. All matters having been fully briefed, defendant's motion for summary judgment is now ripe for the Court's consideration.

*Standard of Review*

In considering a motion for summary judgment, the Court "has no real discre-

tion in determining whether to grant summary judgment." *U.S. v. Gammache*, 713 F.2d 588, 594 (10th Cir.1983). The Court must view the pleadings and documentary evidence in the light most favorable to the nonmovant, *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 527–28 (10th Cir.1994), and summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Akin v. Ashland Chemical Co.*, 156 F.3d 1030, 1034 (10th Cir.1998). " '[T]he moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment.' " *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991) (quoting *Ewing v. Amoco Oil Co.*, 823 F.2d 1432, 1437 (10th Cir.1987)). However, once the moving party meets its burden, the burden then shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The "party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or

---

**2.** Plaintiffs dispute this fact but offer no support for their position other than their own complaint. As the Tenth Circuit noted in *Coleman v. Darden*, 595 F.2d 533, 536 (10th Cir.1979), a party opposing a properly supported summary judgment motion "may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried." Although plaintiffs state that "[i]t was very common for FNBN to communicate with CBOC/TU by phone and informal processes where credit reporting er-

rors were concerned[,]" this alone cannot support an inference that TU or CBOC reported plaintiffs' dispute to FNBN. Plaintiffs offer no deposition testimony, affidavit, or documentary evidence from TU or CBOC that either entity reported plaintiffs' dispute to FNBN. Moreover, Bryan Lee, FNBN President and CEO, and Bill Askins, an FNBN loan officer, specifically deny ever having received notice of plaintiffs' dispute from TU or CBOC. Therefore the only reasonable inference to be drawn is that neither TU nor CBOC notified FNBN of plaintiffs' dispute.

denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted).

### Discussion

■ Federal jurisdiction in this case hinges on defendant's alleged FCRA violations.[3] Congress enacted the FCRA "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information ...." 15 U.S.C. § 1681(b); *see also Matthiesen v. Banc One Mortg. Corp.*, 173 F.3d 1242, 1245 (10th Cir.1999). Accordingly, the FCRA places distinct obligations on three types of entities: (1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies. *See Aklagi v. Nationscredit Fin.*, 196 F.Supp.2d 1186, 1192 (D.Kan.2002).

■ In the instant case, FNBN is a furnisher of credit information and, as such, its obligations are set forth in 15 U.S.C. § 1681s–2. Section 1681s–2 imposes two general sets of duties on furnishers of credit information. First, under § 1681s–2(a), furnishers of credit information have a duty to provide accurate information to a credit reporting agency. Congress did not create a private right of action for violations of this section, providing at 15 U.S.C. § 1681s–2(d) that such violations "shall be enforced exclusively ... by the Federal agencies and officials and State officials identified in that section." The FCRA imposes a second set of duties under § 1681s–2(b) that requires furnishers of information to: (1) conduct an investigation with respect to disputed information; (2) review all relevant information provided by the consumer reporting agency; (3) report the results of the investigation to the consumer reporting agency; and (4) if the investigation finds that the information is incomplete or inaccurate, report those results to all other national consumer reporting agencies. A private right action does exist for violations of this set of duties, but it is vital to note that these duties are only triggered after a furnisher of information receives notice of a consumer dispute from a credit reporting agency. In the absence of such notification, no duty arises. Specifically, § 1681s–2(b) imposes these duties "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute" regarding the accuracy of information it provided to a consumer reporting agency. Section 1681i(a)(2) requires a consumer reporting agency, within five business days after receiving the consumer's dispute to notify any person who provided any relevant item of information about the dispute. Courts have consistently held that a furnisher's duty under § 1681s–2(b) is triggered "only after the furnisher receives notice of the dispute from a consumer reporting agency." *Lowe v. Surpas Resource Corporation*, 2003 WL 1678131

---

3. In their response to defendant's motion for summary judgment, plaintiffs also discuss applicability of the Fair Credit Billing Act, 15 U.S.C. 1640(a), 1666, et. seq. The Court's review of plaintiffs' complaint reveals no allegation that FNBN violated the Fair Credit Billing Act. Therefore, the applicability of this federal statute is not properly before the Court.

(D.Kan.2003) (quoting *Aklagi*, 196 F.Supp.2d at 1196 (D.Kan.2002)).

■ Plaintiffs have conducted lengthy depositions with several key representatives from TU, CBOC, and FNBN; they have also obtained voluminous business records from these parties. And yet, plaintiffs have produced not one scintilla of evidence that TU or CBOC notified FNBN of their dispute. Obviously FNBN knew of plaintiffs' dispute. Furthermore, the record indicates that FNBN was in fairly regular contact with CBOC and TU regarding the software conversion errors that occurred in early 1999. But these facts simply do not speak to whether CBOC or TU notified FNBN of plaintiffs' dispute. Again, in order to trigger the duties under the FCRA, FNBN had to be notified of plaintiffs' dispute *by a credit reporting agency*. On the record before it, the Court must conclude that this never occurred. Therefore, as a matter of law, FNBN violated no duty under the FCRA.

■■ The Court has jurisdiction over the state law claims only through the exercise of its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c). Pursuant to 28 U.S.C. § 1367(c)(3), a district court has discretion to decline to exercise supplemental jurisdiction once it has dismissed the claims over which it had original jurisdiction. *Panis v. Mission Hills Bank*, 60 F.3d 1486 (10th Cir.1995). Relevant considerations include judicial economy, convenience, fairness, and comity. The strongest consideration here is that state courts are more familiar with, and better equipped to address, the remaining state law causes of action. The Court therefore exercises its discretion and declines supplemental jurisdiction over the remaining claims. Accordingly, the Court dismisses without prejudice plaintiffs' state law claims against FNBN.

ACCORDINGLY, IT IS THE ORDER OF THE COURT that the motion for summary judgment of defendant First National Bank & Trust Company of Nowata is GRANTED.

IT IS THE FURTHER ORDER OF THE COURT that plaintiffs Kent Whisenant and Linda Whisenant's state law claims against FNBN are dismissed without prejudice. Judgment will issue by separate document as required by Fed. R.Civ.P. 58.